## Chicago & Alton Railroad Company v. Patrick Maroney.

1. MASTER AND SERVANT—*Burden of Furnishing Safe Appliances.*— The burden of furnishing safe appliances is upon the master, and although the master is not liable for defects and dangers known to the servant, yet the servant may rely upon the master in such regard, and is not bound to investigate and test the fitness and safety of the appliance in the absence of notice that it is defective or unsafe.

2. FELLOW-SERVANTS—*Carpenters and Bricklayers.*—The carpenters who build a scaffold and the bricklayers who work upon it are not to be regarded as fellow-servants, in considering the question of the proper construction of the scaffold, when such carpenters are under a different foreman and the work is entirely disassociated.

3. DAMAGES—*When Not Excessive.*—What is an adequate compensation for personal injuries is often a question of great difficulty. Under the circumstances of this case a judgment for $2,500 is not deemed to be excessive.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Heard in this court at the October term, 1896. Affirmed. Opinion filed December 28, 1896.

JAMES N. BROWN and M. J. SCRAFFORD, attorneys for appellant.

WILLARD GENTLEMAN and EDWIN W. SIMS, attorneys for appellee.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellee, a brickmason, recovered a judgment for

$2,500 against the appellant, for personal injuries received by him from the falling of a scaffold, upon which he, together with five other brickmasons and two helpers, had started to work on the morning of May 15, 1893, for the purpose of finishing the top of the brick wall of a roundhouse being erected by the appellant.

The particular scaffold upon which the gang of which appellee was one began work on the Monday morning in question, was constructed by carpenters after the brickmasons quit work at five o'clock on the previous Saturday afternoon or evening, and was about twenty feet high, and had never been worked on but five or ten minutes before it fell.

There was evidence that tended to show that the scaffold was defectively constructed, especially in that braces that should have been nailed under the foot-locks were omitted, and that there was defective construction in other respects.

At all events, the scaffold fell because of inherent weakness in construction or material, or because of a weakening of it by depredators between Saturday evening, when the carpenters put it up and left it, and Monday morning, when the masons began to use it.

Concerning the latter, the foreman in charge of the job testified that subsequent to the accident he examined the material of which the scaffold was composed, and found marks in three places that indicated to him that some depredator had, with a chisel or a bar, pried portions of it apart, so that when weighted it would fall, but he made no report of such examination to the appellant or any person to whom a report of such a fact should properly be made.

Considering that circumstance in connection with the inherent improbability of there being any certain detection of such evidences as he said he observed, upon lumber that had been previously used for other scaffolds, and had fallen in a mass with several men and a considerable quantity of brick and mortar, we think the jury might reasonably, as they evidently did, place but slight reliance upon the testimony of the witness.

The same material had been used in other scaffolds at different points in the building, and, previous to its having been taken down and put up again on Saturday before the accident, had always sustained the weight put upon it. We must therefore conclude, as the jury doubtless did, that the carpenters in their haste to get away on Saturday evening, of which there was some evidence, neglected to properly construct it, and that as a consequence it fell. There is no evidence that appellee knew, or had reason to know, of the defective construction.

The burden of furnishing safe appliances is upon the master, and although the master is not liable for defects and dangers known to the servant, yet the servant may rely upon the master in such regard, and is not bound to investigate and test the fitness and safety of the appliance in the absence of notice that it is defective or unsafe. C. & E. I. R. R. Co. v. Hines, 132 Ill. 161.

There is some contention by the appellant that appellee and the carpenters who built the scaffold were fellow-servants, and for that reason the appellant is absolved from liability, but we fail to discern anything beyond bare plausibility in the argument.

The carpenters and the masons were under different foremen, and their work was entirely disassociated.

It was testified by the carpenter in charge of the scaffold construction, that the brickmasons never went upon the scaffolds until the carpenters' work was entirely completed.

True, it was requisite to the work of the masons that scaffolds should be provided, but their erection was scarcely more directly associated with the bricklaying, except in point of time, than was the manufacture of the lumber or nails out of which the scaffolds were built.

We need only refer to the case of North Chicago Rolling Mill Company v. Johnson, 114 Ill. 57, for the definition of who will be regarded as fellow-servants, and we will not extend that definition so far as to cover the case at bar.

No fault is found with the instructions given at the request of appellee, and we are satisfied that there was no

error in refusing to give the rejected ones offered by appellant.

Concerning the argued proposition that a servant is, equally with the master, chargeable with notice of defects, and that knowledge of defects must be brought home to the master, we will content ourselves with citing C. & E. I. R. R. Co. v. Hines, 132 Ill. 161; Goldie v. Werner, 50 Ill. App. 297; Rice and B. M. Co. v. Paulsen, 51 Ill. App. 123; Wharton on Negligence (2d Ed.), Sec. 211.

The remaining contention concerns the alleged excessiveness of the verdict, and has received much consideration.

The appellee was badly hurt temporarily, as may readily be seen from the evidence of the condition he was found in and extricated from, as testified to by entirely disinterested witnesses. As to the permanent disabilities under which appellee is claimed to suffer, the evidence is of a much less satisfactory character, being mainly confined, as it is, to the testimony of himself, his mother and sister, and consisting principally of what are known as subjective symptoms.

But upon the whole, we do not think we can state the rule in such regard more completely than was done in Illinois Cent. R. R. Co. v. Cole, 62 Ill. App. 480.

The judgment of the Superior Court must be affirmed.